# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUGLAS RAY WINN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 18-CV-0382-JED-JFJ |
| | ) |
| MAX COOK, | ) |
| Creek County District Attorney; | ) |
| DOUGLAS W. GOLDEN, | ) |
| Creek County District Judge, | ) |
| | ) |
| Respondents. | ) |

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2241 petition for a writ of habeas corpus, filed through counsel on July 24, 2018 (Doc. 2). Respondents filed a response to the petition (Doc. 8), and Petitioner filed a reply (Doc. 9). Both parties submitted relevant state court records. Docs. 2, 8. For the reasons that follow, the Court denies the petition.

## *BACKGROUND*

Petitioner is currently awaiting trial in the District Court of Creek County on charges filed against him in Case Nos. CF-2016-248 and CF-2016-250. Doc. 2, at 1.[1] Petitioner was arrested on the charges in both cases on May 31, 2016, and has remained free on bond since that date. Doc. 8, at 2; Docs. 8-1, 8-2. During a hearing on June 5, 2017, presided over by Respondent Douglas W. Golden, a Creek County District Judge, Petitioner signed a written form waiving his right to a jury trial. *See* Doc. 2-2 (signed, written jury waiver form); Doc. 8-3 (same). He did so in exchange for admission into the Anna McBride Court Program. Doc. 2, at 5; Doc. 8, at 2. According to

---

[1] For consistency, the Court's record citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

Respondents, "[t]his specialized program allows a defendant who has committed a serious felony, but who also has a documented history of mental illness, an opportunity to receive treatment and intensive supervision in the community." Doc. 8, at 2. Additional handwritten notes on the jury waiver form reflect that the State would reduce Petitioner's charges to two misdemeanor counts if he successfully completed the program. Doc. 2-2. Petitioner did not complete the program, and his case was set for a non-jury trial. Doc. 2, at 5; Doc. 8-4, Tr. Mot. Hr'g, at 9-10, 15-16. Petitioner's attorney, Gene Thompson, subsequently requested a competency evaluation and, on February 14, 2018, the state district court found Petitioner competent to stand trial.[2] Doc. 2, at 6; Doc. 2-3; Doc. 8-2, at 4.

On May 10, 2018, Petitioner moved for reinstatement of his jury trial. Doc. 2, at 6. He alleged he did not knowingly, voluntarily, and intelligently waive his right to a jury trial. *Id.* The state district court held a motion hearing on May 24, 2018. *Id.*; *see also* Doc. 8-4, Tr. Mot. Hr'g, at 1. Respondent Golden also presided over that hearing. Doc. 8-4, Tr. Mot. Hr'g, at 1. Represented by Thompson and Robert Gifford, Petitioner presented two witnesses: Petitioner and Thompson. *Id.* at 2-3.

Petitioner testified that on June 5, 2017, he understood that he was "signing the paperwork to start the Anna McBride Court." Doc. 8-4, Tr. Mot. Hr'g, at 8. Petitioner admitted that he signed the written jury waiver form, but testified he did not recall doing so. *Id.* at 8-11. Petitioner admitted that he was represented by an attorney at the June 5, 2017, but testified he had no specific recollection of discussing the waiver with either his attorney or the presiding judge. *Id.* at 9.

---

[2] Petitioner stipulated that he was competent to stand trial and waived his right to have jury determine that issue. Doc. 8-2, at 4.

Petitioner testified that he previously had been diagnosed with post-traumatic stress disorder resulting from his military service, and that he believed he was taking medication on June 5, 2017. *Id.* at 8, 12. Petitioner testified that he felt competent to assist his attorneys with his defense. *Id.* at 10. When asked if he recalled waiving his right to a jury trial, Petitioner responded, "I kind of thought this was together—that I had to do this to enter the Anna McBride Court." *Id.* at 11.

On cross-examination, Petitioner testified he completed high school and some college, he served as a sergeant in the military, and he is able to read. *Id.* at 13-14. He testified he did not read the jury waiver form before signing it. *Id.* at 14. He also did not recall whether the presiding judge asked him if he had signed the waiver form. *Id.* Petitioner did recall walking to a podium, being told to "sign here," and feeling "rushed" to sign the paperwork because there were other people in the courtroom. *Id.* at 17. He admitted he was represented by counsel when he signed "a document," but because he did not read the document he could not say whether "it was the Waiver of the Jury Trial or the entrance to the Anna McBride Court." *Id.* at 18.

On redirect, when asked whether he understood "what that Jury Trial Waiver meant," Petitioner responded, "I mean, I know what a Jury Trial Waiver is, but, I mean, I thought it was something that had to be done to enter that program." *Id.* at 20. When asked additional questions by the court, Petitioner testified he did not "understand the full scope of" the waiver and had no specific memory of discussing the waiver with Thompson. *Id.* at 21.

Thompson testified he attended the June 5, 2017 hearing and signed the waiver form. Doc. 8-4, Tr. Mot. Hr'g, at 22. Thompson did not recall any specific discussion with Petitioner regarding the waiver. *Id.* at 23. He testified that his "standard procedure" is to advise a defendant "that a jury trial is in the nine rights that we have laid out in the Lumpkin form" and that the waiver of a jury

3

trial "is permanent." *Id.* at 23, 29. He further testified that, in his experience, Respondent Golden "has a very consistent script that he uses" when advising defendants as to "the permanent nature of [a jury trial] waiver." *Id.* at 29. Thompson testified Petitioner has a "significant mental health history," but appeared "lucid" during the June 5, 2017 hearing. *Id.* at 24, 31. He also testified he had no reason to believe Petitioner "didn't know what was going on." *Id.* at 32.

At the end of the hearing, the state district court denied Petitioner's motion to reinstate his right to a jury trial. Doc. 8-4, Tr. Mot. Hr'g, at 37; *see also* Doc. 2-5, at 2 (court docket minutes). In denying the motion, Respondent Golden acknowledged that the June 5, 2017 hearing was not transcribed. Doc. 8-4, Tr. Mot. Hr'g, at 35. He also stated he had no "clear recollection of this particular case when the waiver was offered." *Id.* Respondent noted that he, Petitioner, the State, and Thompson signed the waiver form on June 5, 2017. *Id.* He further noted that beneath his own signature line was a handwritten notation: "ADV." *Id.* Respondent Golden stated that he makes this notation when he is "satisfied that [he has] advised" a defendant about a jury trial waiver and that the waiver "is a permanent decision." *Id.* Finally, Respondent stated that he "would not have allowed a Defendant to offer [him] such a waiver if, from the bench, it appeared [the defendant was] suffering from some sort of delusion or . . . somehow incompetent." *Id.*

In addition to relying on the written waiver form, Respondent Golden found the testimony from the May 24, 2018 hearing supported a finding that the waiver was valid. Citing Thompson's testimony and Respondent's own experience in presiding over criminal cases handled by Thompson, Respondent found that Thompson "would not allow [a jury waiver form] to be signed if he had questions about [the defendant's] understanding and competency at the moment." *Id.* at 36. Respondent also found that the testimony did not support that Petitioner "was incompetent at the

4

time he signed the waiver on June 5, 2017." *Id.* Respondent therefore found that the waiver was "given knowingly and willingly." *Id.* at 36-37.

Following the state district court's denial of his motion to reinstate the jury trial, Petitioner sought extraordinary relief from the Oklahoma Court of Criminal Appeals (OCCA) by filing an application for a writ of mandamus or prohibition. Doc. 2-1. Petitioner reasserted that he did not knowingly, willingly, or voluntarily waive his right to a jury trial and asked the OCCA to "issue an extraordinary writ prohibiting the District Court from proceeding with a non-jury trial." *Id.* at 3. By order filed June 29, 2018, in Case No. MA-2018-0632, the OCCA denied Petitioner's request. *Id.* at 2, 5. Primarily citing the written jury waiver form, the OCCA concluded that Petitioner did not meet his burden to show "that the trial court's decision is unauthorized by law or that he has a clear legal right to the relief sought." *Id.* at 4-5.

## ***DISCUSSION***

Petitioner filed the instant § 2241 habeas petition on July 24, 2018. Doc. 2. As he did in state court, Petitioner alleges he did not knowingly, intelligently, and voluntarily waive his right to a jury trial. Doc. 2, at 7-9. Petitioner asks this Court to "[i]ssue a Writ of Habeas Corpus declaring" that he has a constitutional right to a jury trial and "mandat[ing] that he be allowed to proceed to trial by jury." Doc. 2, at 4-5. Respondents contend that Petitioner's waiver was knowing and voluntary and urge this Court to deny the habeas petition. Doc. 8, at 4-5.

**I.   Preliminary matters**

Before reaching the merits of Petitioner's request for habeas relief, the Court finds it necessary to briefly address four preliminary matters: jurisdiction, exhaustion, abstention, and the

applicable standard of review. Petitioner addresses the first and second matters; Respondents address only the second. Docs. 2, 8.

### A. Jurisdiction

Even though Respondents do not question the Court's jurisdiction over Petitioner's § 2241 habeas petition, this Court has an independent duty to determine whether jurisdiction exists. *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1260 (10th Cir. 2018). And Petitioner, as the party invoking federal jurisdiction, has the burden to sufficiently allege its existence. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

Petitioner primarily alleges this Court has jurisdiction under 28 U.S.C. § 2241. Doc. 2, at 2-3.[3] He acknowledges that he is not yet "in custody" under a judgment or sentence and that he is free on bond. *Id.* But, he argues, he is "in custody" within the meaning of § 2241. *Id.* The Court agrees. A petitioner seeking habeas relief under § 2241(c)(3) "must satisfy the 'in custody' requirement as a prerequisite to habeas corpus jurisdiction." *Dry v. CFR Court of Indian Offenses for Choctaw Nation*, 168 F.3d 1207, 1208 (10th Cir. 1999). However, the "petitioner need not show actual, physical custody to obtain relief." *Id.* (citing *Maleng v. Cook*, 490 U.S. 488, 491 (1989)). Instead, the petitioner can satisfy the in-custody requirement by showing that "he or she is subject to 'severe restraints on [his or her] individual liberty.'" *Id.* (alteration in original) (quoting *Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973)). A severe restraint is one "not shared by the public

---

[3] Petitioner also invokes this Court's jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction); 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights actions "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote"); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201, 2202 (the Declaratory Judgment Act). As further discussed below, the Court finds it has jurisdiction under § 2241(c)(3). The Court thus declines to consider Petitioner's proffered alternative sources of jurisdiction.

generally." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). When a petitioner is free on bond pending trial, but "remain[s] obligated to appear for trial at the court's discretion," the in-custody requirement is met. *Id.*; *see also Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300-01 (1984) (concluding petitioner who was released on personal recognizance, after his conviction was vacated on application for a new trial, was "in custody" for purposes of habeas corpus statute). Here, Petitioner has been free on bond since his arrest in May 2016. However, because he remains obligated to appear at trial at the trial court's discretion, he is "in custody" for purposes of § 2241(c)(3). As a result, the Court has jurisdiction to consider his habeas petition.

### B. Exhaustion and abstention

Next, the Court must consider two issues implicating the principle of comity between state and federal courts: exhaustion and abstention. *See McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009) (describing exhaustion of state remedies as a "procedural prerequisite for relief" and noting that "[e]xhaustion is a doctrine of comity and federalism"); *Walck v. Edmonson*, 472 F.3d 1227, 1232-34 (10th Cir. 2007) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971), and discussing potential application of *Younger* abstention doctrine in context of state prisoner's request for pretrial habeas relief under § 2241).

Ordinarily, a federal court cannot grant federal habeas relief to a state prisoner on the basis of an alleged constitutional violation unless the prisoner has first exhausted available state remedies. 28 U.S.C. § 2254(b)(1); *Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017), *cert. denied* 138 S. Ct. 978 (2018). To satisfy the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

7

And the exhaustion requirement applies regardless of whether the prisoner seeks relief under § 2241 or § 2254. *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000). Here, Petitioner alleges, Respondents appear to concede, and the Court finds, that Petitioner exhausted available state remedies by presenting his federal claim to the state district court and seeking extraordinary relief from the OCCA. Doc. 2, at 4; Doc. 8, at 4.

Even though Petitioner has exhausted his federal claim, the Court must also consider whether it is appropriate to intervene in the ongoing state criminal proceeding. Under the *Younger* abstention doctrine, a federal court must decline to exercise jurisdiction when three conditions are met: (1) a state criminal proceeding is ongoing, (2) the proceeding offers an adequate opportunity to litigate federal constitutional issues, and (3) the proceeding involves important state interests. *Walck*, 472 F.3d at 1233. Under the facts of this case, it appears all three conditions are met: Petitioner's criminal prosecution is pending in state district court, Petitioner litigated his federal claim in state court, and the State necessarily has an important interest in Petitioner's criminal prosecution.

Nonetheless, when, as here, a petitioner seeks "only to demand enforcement of" a fundamental trial right, the petitioner may sometimes do so by requesting pretrial habeas relief through a § 2241 petition. *Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 489-90 (1973). In *Braden*, the Supreme Court sanctioned a state prisoner's use of a § 2241 petition to demand enforcement of his constitutional right to a speedy trial. *Braden*, 410 U.S. at 488-93. Similarly, in *Walck*, the United States Court of Appeals for the Tenth Circuit allowed a petitioner to seek pretrial habeas relief under § 2241 where she alleged that permitting her pending state criminal prosecution to go forward would violate her right to be free from double jeopardy. 472 F.3d at 1230, 1232. In doing so, the Tenth Circuit explained that the *Younger* abstention doctrine does not apply "where

irreparable injury can be shown." *Walck*, 472 F.3d at 1233 (quoting *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001)). The court declined to decide whether the three conditions for *Younger* abstention were met because it found the "case present[ed] an extraordinary circumstance warranting federal intervention." *Id.* at 1233. The court specifically reasoned that "federal intervention is justified where prospective state prosecutions run afoul of the Double Jeopardy Clause." Thus, the court held, "*Younger* abstention is unwarranted where a criminal accused presents a colorable claim that a forthcoming second state trial will constitute a violation of her double jeopardy rights." *Id.* at 1234.

Admittedly, *Walck* is not directly on point. There, the petitioner alleged a potential double-jeopardy violation rather than a potential violation of the right to a trial by jury. However, the Court finds *Walck*'s rationale applicable here. Like the petitioner in *Walck*, Petitioner alleges that a prospective state criminal prosecution will violate a fundamental trial right. Moreover, like the petitioner in *Walck*, Petitioner could be irreparably harmed if the state proceeds with a non-jury trial based on Petitioner's allegedly invalid waiver of his right to a jury trial. Thus, the Court concludes, under the particular circumstances of this case, *Younger* abstention is unwarranted.

### C. Standard of review

Finally, while neither party discusses the proper standard of review, the Court finds Petitioner's federal claim, properly asserted in a § 2241 petition, is subject to de novo review. *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1042-43 (10th Cir. 2017); *see also Walck*, 472 F.3d at 1234 ("The deferential standard of review contained within § 2254 is . . . only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence.").

With these preliminary matters determined, the Court turns to the merits of Petitioner's federal claim.

## II. Alleged Sixth Amendment violation

Petitioner claims that if his criminal prosecution proceeds to a non-jury trial the State will violate his Sixth Amendment right to a jury trial because the record does not show that he knowingly, voluntarily and intelligently waived that right. Doc. 2, at 3-4, 7-9; Doc. 9, at 2-3.[4] Respondents contend Petitioner's waiver is valid and urge the Court to deny his request for habeas relief. Doc. 8, at 4-5.

"The Sixth Amendment as incorporated by the Fourteenth Amendment guarantees the right of a trial by jury in all state criminal cases." *Stouffer v. Duckworth*, 825 F.3d 1167, 1177 (10th Cir. 2016) (quoting *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006)), *cert. denied sub nom. Stouffer v. Royal*, 137 S.Ct. 1226 (2017). But, like other constitutional rights, the right to a jury trial may be waived. *United States v. Mitchell*, 633 F.3d 997, 1001 (10th Cir. 2011). To satisfy the Constitution, a criminal defendant's waiver of his fundamental right to a jury trial must be knowing and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). This means it must be based on "an intentional relinquishment or abandonment of a known right or privilege." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In addition, such a waiver cannot be presumed "from a silent

---

[4] Petitioner also broadly contends (1) that "[t]he practice of having defendants facing criminal charges waive their right to a jury to gain entry into a mental health court or drug court or to receive a needed continuance of a trial is a state court practice throughout Oklahoma that must simply end," and (2) "the State's practice of securing a waiver of a fundamental right without a court reporter is a practice that is fraught with peril." Doc. 9, at 4. To the extent Petitioner challenges statewide "practice[s]" relating to jury waivers, his challenges exceed the scope of this habeas proceeding. Thus, the Court considers Petitioner's contentions regarding systemic procedural defects only to the extent they inform the analysis of whether Petitioner's waiver on June 5, 2017, was knowing and voluntary.

record." *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *see also Bench v. State*, 743 P.2d 140, 142 (Okla. Crim. App. 1987) ("The right of trial by jury can be waived only if there is a clear showing that such waiver was competently, knowingly, and intelligently given."). In the context of a federal prosecution, the fundamental right to a jury trial may be waived "if: (1) the waiver is in writing; (2) the government consents; (3) the trial court accepts the waiver; and (4) the waiver is knowing, intelligent, and voluntary." *United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir. 1995). For the waiver to be voluntary, "[a] court cannot, and must not, act so as to exert pressure on a defendant to waive his right to a jury." *United States v. O'Daniel*, 328 F. Supp. 2d 1168, 1179 (N.D. Okla. 2004).

Here, Petitioner appears to challenge the validity of his waiver on four grounds: (1) it was not voluntary because he thought he had to waive his right to a jury trial to get into mental health court, (2) it was not knowing because he did not read the waiver form before he signed it, (3) it was not competent because Petitioner has a documented history of mental illness, and (4) there is no evidence that his waiver was knowing and voluntary because the June 5, 2017 hearing was not transcribed. Doc. 2, at 7-9; Doc. 9, at 2-6.

The Court agrees with Petitioner that the absence of a transcript of the June 5, 2017 hearing is troubling. As Petitioner contends, federal and state courts have repeatedly stated that when a criminal defendant waives a fundamental right, the "better practice" is to make a record of the waiver. *See, e.g.*, *Robertson*, 45 F.3d at 1432 (noting "unanimous agreement among circuit courts that have addressed the issue that trial courts should inform defendants, *on the record*, of the nature of the right to trial by jury and the consequences of waiving that right before a waiver is accepted" (emphasis added)); *Kerr v. State*, 738 P.2d 1370, 1372 (Okla. Crim. App. 1987) ("The better practice

11

is for the accused to waive trial by jury personally and in open court either orally or in writing. At such time the trial judge should make inquiry of the accused to assure in his mind the accused's waiver is expressly and intelligently made.").

But the absence of a transcript is not dispositive on the issue of whether Petitioner's waiver comports with due process. As stated in *Robertson*, "The Constitution requires only that a waiver of the right to trial by jury be knowing, intelligent, and voluntary." 45 F.3d at 1431. There is no constitutional requirement that a jury trial waiver be memorialized through a court transcript. *See Griggs v. Ray*, 118 F. App'x 381, 383 (10th Cir. 2004) (unpublished)[5] (noting that "[n]either . . . an oral colloquy, nor any other particular form of waiver, is required for a valid waiver [of a jury trial] as a matter of federal constitutional law" (alterations in original) (quoting *Fitzgerald v. Withrow*, 292 F.3d 500, 504 (6th Cir. 2002))).

Even without a transcript from the June 5, 2017 hearing, the Court finds the record sufficiently demonstrates that Petitioner's "waiver was competently, knowingly and intelligently given." *Kerr*, 738 P.2d at 1372. The most significant evidence in the record is the signed, written jury waiver form. In determining whether a plea is knowing and voluntary, courts may consider answers a defendant has provided on written forms relevant to the plea. *Hoffman v. Young*, 23 F. App'x 885, 887 (10th Cir. 2001) (unpublished). The Court finds no good reason not to apply that same principle in determining whether a jury waiver is knowing and voluntary. Here, Petitioner signed a form entitled "Defendant's Waiver of Trial by Jury." Doc. 2-2. That form provides:

> The undersigned defendant states the following:

---

[5] The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

(1) I have a right to a trial by a jury, that this jury would be composed of ( ) 6 or ( X) 12 jurors and I would help choose them.

(2) The jury's verdict would have to be unanimous.

(3) If I waive the right to a jury, my guilt or innocence will be decided by a Judge alone.

(4) There are advantages to certain cases being heard by a jury.

(5) Even though I may be waiving a jury to take advantage of a plea bargain, I realize that this waiver is final and cannot be retracted, even if the Judge refuses to accept the plea bargain.

(6) I am not being pressed into signing this and I do so of my own free will.

(7) I am not under the influence of any substance, nor do I need to take any medicine in order to be competent, nor do I have a mental condition so that I cannot understand this Waiver.

I HEREBY waive my right to a jury trial and consent that this case may be tried by a Judge alone. I realize that my waiver is <u>final</u> and cannot be revoked for any reason.

***DO NOT SIGN THIS FORM UNLESS YOU UNDERSTAND IT.***

Doc. 2-2.

Immediately following the all-caps-boldface-type warning is the date of June 5, 2017, and Petitioner's signature. *Id.* While Petitioner testified at the May 24, 2018 hearing that he did not recall signing this form, or even reading it, he did admit that he signed it. Doc. 8-4, Tr. Mot. Hr'g, at 8-11. By signing the form, Petitioner adopted the statements therein and thus indicated (1) that he understood he had a right to a jury trial, (2) that he was permanently waiving that right in exchange for a benefit, (3) that he was doing so voluntarily, and (4) that he was competent to waive

that right.[6] Doc. 2-2. In addition, Respondent Golden signed the jury waiver form. *Id.* Immediately preceding Respondent Golden's signature is the following statement: "Defendant made this waiver in open court and I questioned him and find that it is made as the product of his free will and that he understands it fully and is capable of doing so." *Id.* Immediately below Respondent Golden's signature is a handwritten notation, "ADV." *Id.* During the May 24, 2018 hearing, Respondent Golden stated, on the record, that this is the notation he writes on a jury waiver form when he is satisfied that he has advised a defendant about the rights he is waiving and that the defendant understands the permanent nature of the waiver. Doc. 8-4, Tr. Mot. Hr'g, at 35. The Court finds the signed, written waiver form constitutes compelling documentary evidence showing that Petitioner validly waived his right to a jury trial.

The Court finds further support for the validity of the waiver from testimony given at the May 24, 2018 hearing. While Thompson did not specifically recall discussing the waiver with Petitioner, he testified that he typically advises defendants of the rights they are waiving before they sign any waiver forms. Doc. 8-4, Tr. Mot. Hr'g, at 23, 29. Thompson also testified that Petitioner appeared to be "lucid" during the June 5, 2017 hearing and that he had no reason to think that Petitioner "didn't know what was going on" during the hearing. *Id.* at 24, 31-32. Moreover, Respondent Golden cited his familiarity with Thompson's criminal defense work and found that Thompson "would not allow [a jury waiver form] to be signed if he had questions about [the defendant's] understanding and competency at the moment." *Id.* at 36. Likewise, Petitioner's own

---

[6] Notably, Petitioner's testimony from the May 24, 2018 hearing demonstrates that he graduated from high school, attended some college classes, served as a sergeant in the military, and has the ability to read. Doc. 8-4, Tr. Mot. Hr'g, at 13-14. Thus, the Court finds that Petitioner's failure to read the form before signing it does not support that the waiver is invalid.

testimony supports that his waiver was competent, knowing and voluntary. Petitioner testified that he was represented by Thompson during the waiver hearing, that he felt competent to assist his attorneys with his defense, and that he did not recall having "a mental health breakdown" on the day he signed the waiver form. *Id.* at 10, 18-19. Petitioner also testified that he "know[s] what a Jury Trial Waiver is" but thought he had to waive his right to a jury trial so he could be admitted into mental health court. *Id.* at 20. This strongly suggests that Petitioner's waiver was "an intentional relinquishment of a known right." *Johnson*, 304 U.S. at 464. In sum, the testimony from the May 24, 2018 hearing, and Respondent Golden's findings from that testimony, further support that Petitioner validly waived his right to a jury trial.

## *CONCLUSION*

Because the record as a whole demonstrates that Petitioner knowingly and voluntarily waived his right to a jury trial, the State will not violate his Sixth Amendment right by enforcing that waiver and permitting Petitioner's case to proceed to trial without a jury. Thus, the Court denies the petition for a writ of habeas corpus.

### **Certificate of Appealability**

When a district court issues a ruling adverse to a habeas petitioner, the court must consider whether to issue a certificate of appealability. Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Petitioner fails to make that showing here, the Court declines to issue a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Doc. 2) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate judgment shall be issued herewith.

ORDERED this 8th day of January, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE